UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LG CAPITAL FUNDING, LLC,

                    Plaintiff,

      v.

FLASR, INC.,

                    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

16-CV-03565 (LDH) (JO)

L SHANN D EARCY HALL, United States District Judge:

    Plaintiff LG Capital Funding, LLC ("LG Capital"), commenced this action on June 28, 2016, and served Defendant FLASR, Inc. ("FLASR"), on July 22, 2016.  (*See* Compl., ECF No. 1; Summons, ECF No. 10.)  Defendant has since failed to appear or defend itself in this matter in any meaningful way.[1]  On November 10, 2016, Plaintiff filed a motion for default judgment.  (Mot. Default J., ECF No. 19.)  On July 27, 2017, Magistrate Judge James Orenstein issued a report and recommendation (the "R&R") recommending that LG Capital's motion be granted in part and denied in part.  (ECF No. 40.)  On August 14, 2017, LG Capital filed an objection challenging Magistrate Judge Orenstein's recommendation that the Court not award Plaintiff liquidated damages, lost profits, or attorney's fees.  (Pl.'s Objs. July 27, 2017 R. & R. Hon. Magistrate Judge James Orenstein, ECF No. 43 ("Objection").)

### STANDARD OF REVIEW

    The Court reviews de novo LG Capital's objections to the R&R.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  As to the remainder of the R&R, the Court "need only satisfy itself that there is no clear error on the face of the record." *Estate of Ellington ex rel.*

---

[1] On December 16, 2016, Gerald V. Dandeneau appeared on behalf of FLASR (ECF No. 23.)  He later moved to withdraw as FLASR's counsel of record on the grounds that FLASR did not execute his retainer agreement.  (ECF No. 38.)  By order dated July 26, 2017, Magistrate Judge James Orenstein granted the motion.

*Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (internal quotation marks and citation omitted). The R&R is thorough and well-reasoned. However, based on new arguments not before Magistrate Judge Orenstein at the time of its issuance, this Court adopts the R&R in part and modifies it as discussed in detail below.

## BACKGROUND[2]

On or about April 1, 2015, FLASR issued a convertible redeemable note (the "Note") to LG Capital in the amount of $78,750. (Compl. ¶ 6.) The Note had a maturity date of April 1, 2016, at which point FLASR was obligated to repay LG Capital the principal plus 8% interest. (*Id.* Ex. A ("Note") at 1, ECF No. 1-1.) The Note also contained a stock-conversion provision permitting LG Capital to convert all or part of the outstanding principal of the Note into shares of FLASR's common stock. (Compl. ¶ 7.) To ensure the availability of shares for conversion, the Note provided that FLASR would initially "issue irrevocable transfer agent instructions reserving 2,900,000 shares of its Common Stock for conversions." (*Id.* ¶ 11.) The provision required FLASR to "at all times reserve a minimum of four times the [number] of shares required if the [N]ote would be fully converted," and it permitted that LG Capital "may reasonably request increases from time to time to reserve such amounts." (*Id.*) If FLASR failed to pay the principal or interest due on the Note, failed to honor the stock-conversion provision of the Note, or failed to replenish the stock reserve within three business days, FLASR would be in default. (Note § 8.) In the event of default, a 24% interest rate would apply to FLASR's payments. (*Id.*) Additionally, if FLASR failed to honor the stock-conversion provision of the Note, FLASR agreed to pay "$250 per day the shares [were] not issued beginning on the 4th day

---

[2] The following facts are taken from the complaint.

2

after the conversion notice was delivered to [FLASR,]. . . . increas[ing] to $500 per day beginning on the 10th day." (*Id.*)

In October and November 2015, FLASR honored LG Capital's conversion requests by delivering shares in a timely manner. (Compl. ¶¶ 12–15.) However, FLASR failed to honor LG Capital's November 3, 2015 and March 1, 2016 requests to increase the share reserve. (*Id.* ¶¶ 16–18.) In addition, FLASR failed to honor LG Capital's May 12, 2016 conversion request to convert some of the amount due under the Note. (*Id.* ¶¶ 21–22.)

## DISCUSSION

LG Capital objects to Magistrate Judge Orenstein's recommendation that the Court not award liquidated damages or lost profits to LG Capital. (Objection 4-5.) In addition, LG Capital maintains that, to the extent the Court agrees with the findings in the R&R, the Court may award expectation damages for FLASR's breach. (*Id.* at 12-14.) Lastly, LG Capital provides evidence to support its request for attorney's fees. (*Id.* at 14-16.) Each objection is addressed in turn below.

**I.      Liquidated Damages**

LG Capital contends that Magistrate Judge Orenstein erred in looking to the express language of the Note, which cast the liquidated-damages provision as a "penalty," to determine that the liquidated-damages provision was an unenforceable penalty. (Objection 6–9.) LG Capital argues that, if the Court applies the usual standard to the provision, the Court will find that the liquidated damages requested meet each prong of the test for enforceability. (*Id.*; Pl.'s Suppl. Mem. Supp. Its Mot. Default J. ("Suppl. Mem.") at 7–9, ECF No. 45.) The Court disagrees.

To enforce a liquidated-damages clause, a court must determine both that the amount of actual loss is difficult or impossible to estimate precisely and that the liquidated damages bear a "reasonable proportion to the probable loss." *Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982). Here, LG Capital fails to establish either prong.

### A. Damages Were Neither Difficult nor Impossible to Estimate Precisely.

LG Capital argues that its losses cannot be determined because it is impossible to know the number of times LG Capital would have converted its shares, the number of times it would have sold converted stock, or the price at which it would have done so. (Objection 8.) This argument is unavailing.

The Second Circuit, relying on "fundamental proposition[s] of contract law, including that of New York," has squarely held that "[t]he damage award resulting from a breach of an agreement to purchase securities is the difference between the contract price and the fair market value of the asset at the time of breach, not the difference between the contract price and the value of the shares sometime subsequent to the breach." *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990). "Courts have therefore rejected the contention that in order to calculate damages it would [be] necessary to speculate when and if a plaintiff would sell its stock." *LG Capital Funding, LLC v. Vape Holdings, Inc.*, No. 16-cv-2217, 2016 WL 3129185, at *4 (E.D.N.Y. June 2, 2016).

Indeed, courts in this district have repeatedly rejected identical arguments from LG Capital itself. *See, e.g.*, *LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, No. 16-cv-1215, 2018 WL 1521861, at *7 (E.D.N.Y. Feb. 20, 2018) ("LG is not entitled to lost profits from any future price increase of the shares it was to receive (just like it would not be penalized for a future decrease in the share value)."), *R. & R. adopted*, 2018 WL 2057141 (Mar. 8, 2018); *Vape*

*Holdings*, 2016 WL 3129185, at *3–4 (rejecting LG's argument that "the dates upon which LG would have sold the stock it did not receive, and the amounts LG would have realized from any such sales, w[ould] be difficult to establish with any degree of certainty") (internal quotations omitted); *LG Capital Funding, LLC v. PositiveID Corp.*, No. 17-cv-1297, 2017 WL 2556991, at *7 (E.D.N.Y. June 12, 2017) (finding that "LG's damages [we]re easily measurable and compensable with monetary damages"). Here, too, LG Capital's expectation damages are readily ascertainable.

### B. The Liquidated Damages Are Not Reasonably Related to Expected Losses.

Even if LG Capital could have shown that actual damages were difficult to estimate, it fails to establish that the liquidated damages it seeks are reasonably related to its expected losses. "A liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed." *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 740 (2d Cir. 1989). "[C]ourts have explained that a damages provision that awards a specified sum 'no matter the timing of the breach' is likely to be a penalty clause because not all breaches are 'of the same gravity' and thus the fixed damage award is not a 'reasonable effort to estimate damage.'" *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, No. 17-cv-46, 2017 WL 3084404, at *6 (E.D.N.Y. July 19, 2017) (quoting *Energy Plus Consulting, LLC v. Illinois Fuel Co., LLC*, 371 F.3d 907, 909-10 (7th Cir. 2004)); *see also Bradford v. N. Y. Times Co.*, 501 F.2d 51, 57 (2d Cir. 1974) (noting that "setting a fixed amount for any breach irrespective of its gravity or the probable damage to be contemplated might well classify the clause as an unenforceable penalty").

Here, the provision at issue provides that following a breach, FLASR is required to pay "$250 per day the shares [were] not issued beginning on the 4th day after the conversion notice was delivered to [FLASR,]. . . . increas[ing] to $500 per day beginning on the 10th day." (Note § 8.) On its face, this provision does not appear to have any relationship to LG Capital's actual or expected damages, and LG Capital does not argue that it does. Rather, LG Capital argues that, because its calculated amount of liquidated damages is less than either amount it calculates for principal and interest or expectation damages, the liquidated damages are "not disproportionate" to LG Capital's alleged harms. (Objection 8.) Yet, LG Capital provides no explanation for the Note's use of $250 or $500 as daily payment amounts or why the fourth and tenth days were selected as benchmarks (rather than, say, the fifteenth and thirtieth days). "Moreover, in assessing if a liquidated damages provision functions as a penalty, courts are to consider whether damages were ascertainable and the liquidated damages amount was unreasonable as of the time of contracting, not the time of the breach." *Union Capital LLC v. Vape Holdings Inc.*, No. 16-cv-1343, 2017 WL 1406278, at *7 (S.D.N.Y. Mar. 31, 2017). In other words, the liquidated-damages clause bears no reasonable proportion to the probable loss and therefore serves only as a penalty. Identical provisions in other LG Capital notes have been found unenforceable on several occasions. *See, e.g.*, *CardioGenics*, 2018 WL 1521861, at *10; *Coroware*, 2017 WL 3973921, at *3; *LG Capital Funding, LLC v. Sanomedics Intl. Holdings, Inc.*, 2015 N.Y. Misc. LEXIS 4294, at *38 (N.Y. Sup. Ct. Nov. 23, 2015) (finding that identical provisions resulted in damages that "[we]re so far in excess of the principal loan amounts . . . and [we]re so conspicuously and grossly disproportionate to the probable loss, that there [could] be no question that the[] liquidated damage clauses were clearly designed to penalize [the defendant]"). The Court finds no reason for a different outcome here.

## II. Lost Profits

LG Capital next objects to Magistrate Judge Orenstein's finding that it is not entitled to lost profits. (Objection at 9–12.) To support an award of lost profits, LG Capital "must make three showings: 1) the damages were caused by the breach; 2) the damages are provable with reasonable certainty; and 3) the damages were within the contemplation of the parties at the time of contract." *Atias v. Sedrish*, 133 F. App'x 759, 760 (2d Cir. 2005) (summary order) (citing *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404 (1993)). If such contemplation is not express, a court may look to "the nature, purpose and particular circumstances of the contract known by the parties[,] . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'" *Travellers Int'l, A.G. v. Trans World Airlines*, Inc., 41 F.3d 1570, 1578 (2d Cir. 1994) (quoting *Kenford Co. v. Cty. of Erie*, 73 N.Y.2d 312, 319 (1989)). Here, there is no question that LG Capital's damages were caused by the breach. LG Capital argues that it has made the third showing—that the damages were within the contemplation of the parties at the time of contracting—but the Court need not reach that issue, because LG Capital fails to make the second showing.

LG Capital's own argument belies its assertion that lost-profits damages were provable to a reasonable certainty. Indeed, LG Capital states plainly that "lost profits resulting from FL[A]SR's failure to deliver shares [were] difficult to ascertain at the time of contracting." (Objection 9; *see also* Decl. Kevin Kehrli Supp. Mot. Default J. ("Kehrli Decl.") ¶ 15, ECF No. 19-2 ("Plaintiff's damages from Defendant's failure to deliver shares are exceedingly difficult to calculate with any certainty, due to variations in trade price, trade volume, and timing of sales of Defendant's common stock.").) Moreover, LG Capital provides no support for the assumption

7

that it would have "more likely" sold its stock "nearer to the median price," as opposed to any other price. (Kehrli Decl. ¶ 17.)

**III.    Expectation Damages**

In objecting to the R&R, LG Capital argues, for the first time, that if the Court denies its requests for liquidated damages and lost profits, the Court should award expectation damages for both the May 12, 2016 conversion and future conversions that could not be submitted. (Objection 12–14; Suppl. Mem. 9–17.) This argument was not presented to Magistrate Judge Orenstein, so he was not afforded the opportunity to address it. Based on this Court's de novo review, expectation damages are appropriate in this case for both the May 12, 2016 conversion and future unfulfilled conversions.

"[T]he doctrine of expectation damages . . . gives force to the provisions of a contract by placing the aggrieved party in the same economic position it would have been in had both parties fully performed." *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728–29 (2d Cir. 1992). As discussed above, the proper measure for LG Capital's expectation damages "is the difference between the contract price and the fair market value . . . at the time of breach." *Sharma*, 916 F.2d at 825. Applying this principal, LG Capital's damages for FLASR's breach of the May 12, 2016 conversion is $3,352.76.[3]

---

[3] The contract price for FLASR stock at the time of the May 12, 2016 conversion notice was $0.0012. (Compl. Ex. E, ECF No. 1-5.) And 1,523,983 shares were to be issued pursuant to the conversion of the Note. (*Id.*) The fair market value of FLASR stock at the time of FLASR's breach on May 17, 2016—three business days after the notice of conversion was issued (*see* Note § 4(a))—was $0.0034. *See* FLSR: Summary for FLASR Inc., Yahoo! Finance, , https://finance.yahoo.com/quote/FLSR/history?period1=1463371200&period2=1463544000&interval=1d&filter=history&frequency=1d (last accessed Dec. 17, 2018). Consequently, had LG Capital sought appropriate expectation damages, its recovery would have amounted to approximately $3,352.76, calculated as follows: $0.0034 [fair market value as date of breach] – $0.0012 [contract price] = $0.0022 [expectation damages per share] × 1,523,983 [number of shares subject to the May 12th conversion] = $3,352.76 [total expectation damages].

LG Capital is also entitled to expectation damages for FLASR's anticipatory breach of future conversions. In *Vape Holdings*, the district court, faced with facts similar to those in this case, articulated a formula for calculating expectation damages for a defendant's refusal to honor future notices of conversion:

> [T]he Court would take the date of the breach and determine the conversion price [the plaintiff] was entitled to on that date, the number of shares [the plaintiff] was authorized to convert, and the market price of those shares on the date of the breach. . . . [T]he Court would then award damages based on the difference between the conversion price and market price multiplied by the number of shares [] to which [the plaintiff] was entitled.

2017 WL 1406278, at *6. Applying the *Union Capital* formula to the instant action, LG Capital is entitled to expectation damages in relation to the balance of the Note in the amount of $151,883.91.[4] Combined with the above-calculated damages of $3,352.76, LG Capital's total expectation damages amount to $155,236.67.

Magistrate Judge Orenstein recommended that the Court award LG Capital unpaid principal in the amount of $69,965 plus accrued interest in the amounts of $3,438.91 (at the regular rate) and $31,990.33 (at the default rate). (R&R 8–9.) LG Capital did not object to these recommended awards. However, because the Court awards LG Capital full expectation damages, LG Capital is not entitled to unpaid principal or accrued interest. As LG Capital itself avers, "[t]he Note . . . provided for a conversion right, through which [LG Capital] could obtain [FLASR] common stock . . . in lieu of repayment of the principal and interest by [FLASR]."

---

[4] The remaining balance of the Note if the May 12, 2016 conversion were executed would have been $82,845.77, which includes both outstanding principal and interest. (Decl. Chris Han Supp. Pl.'s Objs. R. & R. Dated July 27, 2017 ¶ 21, ECF No. 43-1.) If LG Capital had converted the entire balance at that time, it would have been entitled to 69,038,140 shares of FLASR common stock, calculated as follows: $82,845.77 [remaining balance] ÷ $0.0012 [contract price per share] = 69,038,140 [total shares]. Consequently, LG Capital's recovery on the balance would have amounted to approximately $151,883.91, calculated as follows: $0.0034 [fair market value per share on date of breach] – $0.0012 [contract price per share] = $0.0022 [expectation damages per share]. $0.0022 [expectation damages per share] × 69,038,140 [number of remaining shares] = $151,883.91 [total expectation damages].

9

(Objection 1.) Here again, when faced with similar circumstances, courts in this district have made similar findings. *See CardioGenics*, 2018 WL 2057141, at *2 (denying additional damages for principal and interest where note entitled LG Capital "to convert all or any amount of the principal face amount of this [n]ote then outstanding into share of the [defendant]'s common stock" and the court awarded LG Capital expectation damages).

## IV. Attorney's Fees & Litigation Costs

Excepting the $400 filing fee, Magistrate Judge Orenstein denied LG Capital's motion for attorney's fees and litigation costs, subject to LG Capital's refiling its request with the proper documentation and substantiation. (R&R 12–14.) On August 14, 2017, LG Capital filed additional documentation to substantiate its request. (Decl. Chris Han Supp. Pl.'s Objs. R. & R. Dated July 27, 2017 ECF No. 43-1 ("Han Decl.").) For the reasons set forth below, LG Capital's request is granted in part and denied in part.

### A. Attorney's Fees

LG Capital maintains that it is entitled to $35,125 in attorney's fees for 140.50 hours of work at rate of $250 per hour. (Han Decl. ¶¶ 26–28.) The Court disagrees.

In reviewing a request for attorney's fees, a district court must first determine the "presumptively reasonable fee" for the services. "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 112, 118 (2d Cir. 2008)). The Court should then multiply the presumptively reasonable fee by the "reasonable number of hours expended" to determine the appropriate award. *Porzig v. Dresdner,*

*Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 141 (2d Cir. 2007). In determining the reasonable number of hours expended, "the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Here, the same four junior associates—all of whom were admitted to practice in New York in 2015—who worked to collect the amount due under the Note also performed similar work in a recent case. (*Compare* Han Decl. ¶ 27 n.10, ECF No. 43-1 (identifying associates as Chris Han, Esq.; Michael Smaila, Esq.; Kevin Kehrli, Esq.; and Jessica Mass, Esq.), *with* Decl. Kevin Kehrli Supp. Mot. Default J., *Cardiogenics*, No. 16-cv-1215 (E.D.N.Y. Dec. 22, 2017), ¶ 37 n.1, ECF No. 55-2 (same)). In that case, Magistrate Judge Bulsara noted that the prevailing "hourly rates for junior associates in the Eastern District range from $100 to $200," so he "[found] that a reduction of their hourly rates from $250 to $150 [was] appropriate." *Cardiogenics*, 2018 WL 1521861, at *12. Judge Donnelly adopted his recommendation, describing it as "entirely appropriate." 2018 WL 2057141, at *2. This Court agrees with the analysis in *CardioGenics* and applies it to the instant motion. The reasonable hourly rate for the four associates' work is reduced to $150. Because the Court is satisfied that the 140.5 total hours spent on the tasks listed in the itemized bill were not unreasonable, LG Capital is entitled to recover $21,075 in attorney's fees.

    **B.**    **Litigation Costs**

Plaintiff seeks $439.88 in additional litigation costs for FedEx shipments and multiple service attempts. (Han Decl. ¶ 30.) These costs are patently reasonable, so combined with the $400 filing fee, LG Capital is entitled to $839.88 in costs. *See e.g.*, *Clark v. Gotham Lasik,*

11

*PLLC*, No. 11-cv-01307, 2013 WL 4437220, at *9 (S.D.N.Y. Aug. 20, 2013) (finding FedEx and messenger service fees compensable).

## CONCLUSION

The Court has reviewed the remainder of the R&R for clear error and, finding none, hereby adopts Magistrate Judge Orenstein's R&R as the opinion of this Court, except as modified by this order. For the foregoing reasons, LG Capital's motion is GRANTED in part and DENIED in part. The Court awards LG Capital:

(1) $155,236.67 in expectation damages;

(2) $21,075 in attorney's fees; and

(3) $839.88 in litigation costs.

SO ORDERED.

Dated: December 26, 2018
      Brooklyn, New York        s/ LDH
                                      LaSHANN DeARCY HALL
                                      United States District Judge